**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

METH LAB CLEANUP, LLC,

    Plaintiff,

v.                                      Case No: 8:14-cv-3129-T-30TBM

SPAULDING DECON, LLC, LAURA
SPAULDING, JULIE MAZZUCA and
JOSEPH MAZZUCA,

    Defendants.

## **ORDER**

THIS CAUSE comes before the Court upon the Plaintiff's Motion for Partial Summary Judgment (Dkt. #30) and Defendants' Response in Opposition to the Motion (Dkt. #34). Upon review and consideration, it is the Court's conclusion that the Motion should be granted.

### *Background*

Plaintiff Meth Lab Cleanup, LLC ("MLC" or "MLCC") filed this breach of contract action against Spaulding Decon, LLC and Laura Spaulding (collectively "Defendants") for breach of contract. MLC is a company specializing in remediation services of methamphetamine laboratory ("meth lab") decontamination. Defendants are in the same industry and provide similar services. The parties were involved in a prior lawsuit before this Court which was resolved by a Confidential Settlement Agreement, the terms of which MLC now seeks to enforce in the current lawsuit.

### I. The Prior Lawsuit

MLC sued the Defendants in the case styled *Meth Lab Cleanup, LLC v. Spaulding Decon, LLC and Laura Spaulding*, Case No. 8:10-cv-2550-T-30 TGW (the "Prior Lawsuit"), where MLC alleged that the Defendants infringed on its trademarks and copyrights based on the following intellectual property:

> U.S. Trademark Registration No. 3,662,396 filed on September 4, 2007, and issued on August 4, 2009, for the mark METH LAB CLEANUP LLC in International Class 041, U.S. Trademark Registration 3,662,399 filed on September 6, 2007, and issued on August 4, 2009, for the mark METH LAB CLEANUP LLC in International Class 042, U.S. Trademark Registration 3,662,398 filed on September 6, 2007, and issued on August 4, 2009, for the mark METHLAB [sic] CLEANUP LLC in International Class 040

(collectively referred to as the "Trademarks-in-Suit") and

> Copyright Registration No. TX 6-837-133 issued on September 6, 2007, for the MLCC Training Manual, Revision 1, and Copyright Registration No. 6-841-055 issued on September 17, 2007, for www.methlabcleanup.com content

(collectively referred to as the "Copyrights-in-Suit").

MLC and the Defendants entered into a Confidential Settlement Agreement (the "Agreement") to settle the case. Pursuant to the parties' Joint Motion for Entry of Consent Final Order, this Court entered a Consent Final Order finding the Trademarks-in–Suit to be "valid and enforceable under the Lanham Act and the common law of the State of Florida." The Consent Final Order further states that "based on the evidence in this case procured by discovery, a reasonable trier-of-fact could find that the common law mark METH LAB CLEANUP used by MLCC has acquired distinctiveness and connotes a single source of training, testing, consulting and remediation services in the field of clandestine drug laboratory decontamination."

## II. The Confidential Settlement Agreement

Paragraph K of the Agreement states that "[b]y entering into this Agreement, the Parties agree to the validity and enforceability of MLCC's Trademarks-in-Suit, as well as MLCC's Copyrights-in-Suit, as both defined below." Under the "Definitions" section, the Agreement adopted the same definition for Trademarks-in-Suit and Copyrights-in-Suit as defined earlier in this Order. Further, paragraph 3 of the Terms of the Agreement section states that:

> Defendants, including but not limited to Spaulding Decon and Laura Spaulding (as well as their employees, successors, related companies, agents, representatives, consultants, and contractors) agree and admit that the "Copyrights-in-Suit" … are valid and enforceable under the United States Copyright Act. Defendants shall not contest or challenge the validity or enforceability of such copyrights in any subsequent matter, litigation, or related legal proceeding.

Paragraph 7 under the Terms of Agreement section outlines the restrictions and restraints against Defendants' future use of the Copyrights-in-Suit and Trademarks-in-Suit:

> Defendants Spaulding Decon, Ms. Spaulding and any person or entity acting in concert with, or at the direction of such Spaulding Decon and Ms. Spaulding, including any and all contractors, managers, agents, servants, employees, partners, assignees, and any others over which such Defendant may exercise control, are hereby RESTRAINED and RESTRICTED FROM, from [sic] engaging in, directly or indirectly, or authorizing or assisting any third party to engage in, any of the following activities in the United States and throughout the world:
> a. copying, manufacturing, importing, exporting, marketing, sale, offering for sale, distributing or dealing in any product or service that uses, or otherwise making any use of, any of the Copyrights-in-Suit and the Trademarks-in-Suit (subject to the definition found in Paragraph 2 of the Consent Final Order as well as the limitations found in Paragraphs 9 and 10), and/or any intellectual property that is confusingly or substantially similar to, or that constitutes a colorable imitation of, any of

the Copyrights-in-Suit and the Trademarks-in-Suit, whether such use is as, on, in or in connection with any trademark, service mark, trade name, logo, design, Internet use, website, domain name, metatags, advertising, promotions, solicitations, commercial exploitation, television, web-based or any other program, service, or otherwise;

Paragraph 8 under the Terms of Agreement section provides an exception to Defendants' use of the Trademarks-in-Suit which states:

> Defendants' Right to Accurately Describe Services: Plaintiff, Ms. Mazzuca and Mr. Mazzuca herein agree that Spaulding Decon (but none of its contractors, agents, or affiliates) may continue to use the term "meth lab cleanup" to generally describe the nature of services offered by Spaulding Decon, subject to the limitation, and that such use is not an intellectual property infringement.

Paragraphs 9 and 10 under the Terms of Agreement section state the following:

> Plaintiff MLCC, Joseph Mazzuca and Julie Mazzuca herein agree that the current arrangement of the website www.spauldingdecon.com, as it exists on January 26, 2012, is free of infringement of any intellectual property infringement of any rights of the Plaintiff and Counterclaim Defendants.
>
> Dismissal of the TTAB Proceeding and the Pasco County State Court Case: Within ten (10) days of the Effective Date of this Agreement, Defendants shall agree to cancel and/or dismiss with prejudice (i) the current cancellation proceeding before the USPTO Trademark Trial and Appeal Board (TTAB) with regard to the Trademarks-in-Suit; and (ii) any and all state court proceedings in Florida, including the current action in Pasco County between the Parties. Defendants shall provide written notice to MLCC as to such cancellation and dismissals.

### III.    The Cease and Desist Letter and the Authorized Response

After execution of the Agreement, MLC filed three new trademark applications to obtain trademarks for "meth lab cleanup" in addition to its company name. Spaulding did not challenge the marks. On May 19, 2014, MLC sent a cease and desist letter (the "C&D

Letter") to the Defendants regarding their website, www.MethLabServices.com, (the "Website") which has metatags using the capitalized phrase "Meth Lab Cleanup" (the "Metatags"). MLC asserted that this particular use of the phrase violated the Agreement.

In response to the C&D Letter, Defendants' counsel at that time sent an "authorized response" ("Response Letter") indicating that the Defendants "agree[d] that they [would] remove, within (10) days of [the Response Letter], any and all headers, metatags, and related content from www.MethLabServices.com, as well as any related internet information used for search engine optimization regarding the term "Meth Lab Cleanup or colorable imitation thereof[.]" Defendants agreed that MLC's new trademark registrations were valid, enforceable and distinctive.  Defendants also stated that "Spaulding [Decon] intends to comply with the terms of the Confidential Settlement Agreement effective January 26, 2011 [sic]."  Further, "Spaulding [Decon] agree[d] that they will not use any of the previously identified six trademark registrations for the mark METH LAB CLEANUP in uppercase, or any colorable imitation thereof, as an Adword, or in any form of sponsored link campaign."

MLC asserts that prior to filing suit, it relied upon the admissions and representations of the Defendants in the Response Letter and as a result, withheld filing this action. However, the Defendants now assert that their use of the Metatags is not a violation of the Agreement and continue to use it on the Website, prompting MLC to file this lawsuit.

*Discussion*

## I. Legal Standard

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id*. Throughout this analysis, the Court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id*. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49. A district court has the power to grant partial summary judgment. *EPL, Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999).

## II.   MLC's Motion for Partial Summary Judgment

MLC moves for partial summary judgment as to Count I of its complaint which alleges a breach of the Agreement. It argues that based on the plain language of the Agreement, the Defendants' use of the Metatags on the Website is a clear violation of paragraph 7(a) because it is a use of one of the Trademarks-in-Suit in connection with the following prohibited categories: internet use, website, metatags, advertising, promotions, solicitations, commercial exploitation, or "otherwise." Specifically, MLC argues that the Metatags are "identical or at least confusingly and substantially similar to at least one of the Copyrights-in Suit or Trademarks-in-Suit." MLC asserts damages in the form of loss of reputation, lost profits, and the loss of both current and future customers, in addition to attorney's fees and costs.

MLC requests that this Court enter an order that: (1) directs the Defendants to remove the Metatags from their Website, (2) enjoins the Defendants from (a) using or allowing to be used any metatag using the terms "Meth Lab Cleanup" or any confusingly similar terms, and (b) creating or having created any domain name using any of the following terms or any confusingly similar terms: Meth, Lab, and Cleanup, and (3) directs the Defendants to pay actual damages and attorney's fees and costs.

The parties agreed to construe the terms of the Agreement under the laws of the state of Florida. Under Florida law, the elements of a breach of contract action are "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). The parties do not dispute that the Agreement is a valid contract.

The Defendants dispute that they breached the Agreement and that the Plaintiff sustained damages. They argue that paragraph 8 of the Agreement creates a "safe harbor" since it specifically permits the use of "meth lab cleanup" for the purpose of generally describing the Defendants' services. Therefore, they argue, the Metatags on the Website cannot be a violation of the Agreement, they merely describe the content of their services. Further, Defendants argue that paragraph 9 acknowledges that the website www.spauldingdecon.com was free of any infringement as of January 26, 2012, which impliedly permits their use of the Metatags. Laura Spaulding asserts in her Affidavit in Opposition to the Motion that the www.spauldingdecon.com website contained the phrase "meth lab cleanup" in its metatags at the time of the Agreement. Therefore, Defendants argue, the use of the Metatags on the Website cannot now constitute an infringement or breach of the Agreement.

In its examination of a disputed contract provision, a court must examine the disputed terms "in the context of the entire agreement, giving the words their plain and ordinary meaning as understood by a reasonable person." *International Bhd. of Boilermakers v. Local Lodge D111 of the Cement, Lime, Gypsum and Allied Workers Div. of the Int'l Bhd. of Boilermakers*, 858 F.2d 1559, 1562 (11th Cir. 1988), *cert. denied*, 490 U.S. 1047, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989). "Traditional contract-interpretation principles make contract interpretation a question of law, decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent." *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014). "That intent is derived from the objective meaning of the words used." *Id*. However, if the written contract is "ambiguous so that the intent of the parties cannot be understood from

an inspection of the instrument, extrinsic or parol evidence ... may be received in order to properly interpret the instrument." *Lemon v. Aspen Emerald Lakes Assocs., Ltd.*, 446 So. 2d 177 (Fla. 5th DCA 1984)).

Therefore, the issues for the Court to resolve are: (1) whether the use of the Metatags is confusingly or substantially similar to the trademark "Meth Lab Cleanup, LLC," and (2) whether the use of the Metatags constitutes a "general description of the services offered" by the Defendants, so that it is within the safe harbor provision.

### a. "Confusingly or Substantially Similar"

Although the Motion seeks relief pursuant to a breach of contract, and not trademark infringement, the language in the Agreement bans the use of intellectual property that is "confusingly or substantially similar to… or a colorable imitation of" the Trademarks-in-Suit and Copyrights-in-Suit.   The Court will therefore turn to trademark infringement case law for guidance. In the Eleventh Circuit, when analyzing whether there is a likelihood of confusion between two marks, the Court examines the following factors:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1220 (11th Cir. 2008).

Based on the foregoing factors, the Court concludes that the Defendants' use of the capitalized phrase "Meth Lab Cleanup" in the Metatags on the Website is a use that is confusingly or substantially similar to "Meth Lab Cleanup, LLC," the mark at issue in the

9

Trademarks-in-Suit. The Metatags are very similar to the Trademarks-in-Suit, since both use capital letters, with the Metatags merely excluding "LLC" from the phrase. Plaintiff and Spaulding Decon offer the same services, and both sell and advertise their services on the internet. Additionally, the Defendants use the Metatags in a way that gives their product a competitive advantage by associating it with MLC's established mark. *See id.* (affirming district court's finding that defendant's use of plaintiff's trademarks in the metatags of its website when they were direct competitors was likely to cause confusion); *Frehling Enterprises, Inc. v. Int'l Select Group, Inc*., 192 F.3d 1330, 1337 (11th Cir. 1999) *cert. den*., 530 U.S. 1214, 120 S.Ct. 2216, 147 L.Ed.2d 249 (2000) (finding that the "OGGETTI" service mark was infringed and diluted by the defendant's use of the "BELL' OGGETTI" mark when both used capital letters, with one merely adding a descriptive adjective to the dominant portion of the mark, and both were used to describe home furnishings which created a likelihood of consumer confusion.)

### b. "General Description of Services"

The Defendants argue that their use of the Metatags constitutes a "general description of services" which falls within the safe harbor provision of the Agreement. The Court disagrees. In *St. Luke's Cataract & Laser Inst., P.A. v. Zurich Am. Ins. Co*., 506 Fed. Appx. 970, 976 n. 9 (11th Cir. 2013); the court provided the following description of metatags:

> Metatags are words and phrases that describe a website's content. The metatags do not show up on the website itself, only in the source code. The web designer can include whatever metatags he desires. Many search engines use metatags as one way to determine the content of a website. Thus, for example, if you designed a website to advertise your electronics store, you might include keyword metatags such as

> "computers," "cameras," and "televisions," and a content metatag such as "We sell electronics at the best prices." If, however, you wanted to attract customers searching for better known electronics stores by name, you might also include metatags such as "Best Buy" and "Circuit City."

In *St. Luke's Cataract & Laser Inst., P.A*, the court concluded that using content on a website is not the equivalent of using content in a metatag. *Id*. at 976 (evaluating whether complaint alleging copyright infringement for content used for display on a website was covered by insurance policy which excluded claims for the unauthorized use of another's name or product in an e-mail address, domain name, or metatag). The Court went on to note that "[u]sing a term in a metatag … can be a way to attempt to attract people searching for that term via a search engine. Thus, using someone else's name or product in a metatag … might be an attempt to divert their customers to a different website." *Id*. See also *Brookfield Communications, Inc. v. West Coast Entertainment Corp*., 174 F.3d 1036, 1062 (9th Cir. 1999) (concluding that a party's use of a competitor's trademark in its metatags can result in initial interest confusion, wherein the metatags divert people searching for the competitor's website and allow the infringer to improperly benefit from the competitor's good will in the mark.)

The Court concludes that Defendants' use of the capitalized phrase "Meth Lab Cleanup" in the Metatags on the Website does not constitute a general description of their services as contemplated by the Agreement's safe harbor provision. The Metatags are not seen by the general public viewing a website, and the purpose of the Metatags is to optimize the search engine results, and otherwise direct potential customers to the Website. Reading the safe harbor provision in conjunction with the specific limitations imposed on Defendants, and taking into account the safe harbor provision's specific use of the

lowercased version of the phrase "meth lab cleanup," it is clear that it was not the parties' intent to permit the Defendants' current use of the Metatags. Therefore, the Defendants' use of the Metatags on their Website is a material breach of the Agreement. *See Gonzalez v. Florida Dept. of Highway Safety & Motor Vehicles Div. of Fla. Highway Patrol*, 237 F. Supp. 2d 1338, 1361 (S.D. Fla. 2002) *aff'd sub nom. Gonzalez v. Florida Dept. of Hwy. Safety*, 45 Fed. Appx. 886 (11th Cir. 2002) (internal quotation marks and citation's omitted) ("Materiality depends on the nature and effect of the violation in light of how the particular contract is viewed, bargained for, entered into, and performed by the parties.")

Additionally, the Defendants' interpretation of the Agreement is unreasonable. The parties dedicated large portions of the Agreement to restricting the use of phrases that are substantially similar to "Meth Lab Cleanup, LLC" and adding restrictive language to restrain the Defendants' use of the phrases on the internet, websites, domain names, metatags, and on web-based programs. For the Court to read the Agreement as permitting the Defendants to use the capitalized phrase "Meth Lab Cleanup" in the Metatags would deprive the limitations of their full meaning and effect. *See Moore v. State Farm Mut. Auto. Ins. Co.*, 916 So. 2d 871, 875 (Fla. 2d DCA 2005) (quoting *Rafos v. Outboard Marine Corp.*, 1 F.3d 707, 709 (8th Cir.1993)) ("[T]he meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such an inference runs counter to the agreement's overall scheme or plan.")

To be clear, the Court is not holding that the Defendants' use of the lowercased version of the phrase "meth lab cleanup" in metatags is a violation of the Agreement. The Plaintiff and its owners agreed that the website www.spauldingdecon.com was free from infringement as of January 26, 2012. On that date, that website contained "meth lab

cleanup" in its metatags. The Court agrees with the Defendants that the Plaintiff cannot now assert that this particular use is an infringement of its Trademarks-in-Suit or a violation of the Agreement.

### III. Defendants' Affirmative Defenses

"An affirmative defense is a defense which admits the essential facts of a complaint and sets up other facts in justification or avoidance. *Losada v. Norwegian (Bahamas) Ltd.*, 296 F.R.D. 688, 690 (S.D. Fla. 2013) (internal marks omitted). "A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *Id. See also In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988). "Affirmative defenses which simply deny the complaint's allegations are also not affirmative defenses." *Losada,* 296 F.R.D. at 690.

The defending party must rely on or submit record evidence in support of the purported affirmative defenses to create a genuine issue of material fact preventing the entry of summary judgment. *See Real Estate Mortg. Network, Inc. v. Cadrecha*, 8:11-CV-474-T-30AEP, 2012 WL 1581967, at *2 (M.D. Fla. Apr. 30, 2012) (granting partial summary judgment where opposing party's affirmative defenses were not supported by record evidence). Defendants' argument that they properly *alleged* their affirmative defenses are insufficient to contradict MLC's affidavits in support of the Motion.

Defendants assert in their affirmative defenses that Plaintiff failed to state a cause of action, has unclean hands, has consented to the use of "meth lab cleanup" or otherwise acquiesced to its current use, obtained the trademark fraudulently, misused the trademark, and has no intellectual property rights to the phrase "meth lab services." They assert that they have a contractual right to use the phrase "meth lab services." Defendants further

assert that they have not engaged in any activity that constitutes a breach of the Agreement, and otherwise have protection under the safe harbor provision. They also assert that the Trademarks-in-Suit are generic or descriptive and are not entitled to trademark protection; and that Plaintiff's claims are barred because of waiver, estoppel laches, and failure to mitigate damages.

Defendants' affirmative defenses regarding MLC's "failure to state a cause of action" refers to "a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiffs valid prima facie case." *Boldstar Technical, LLC v. Home Depot, Inc.*, 517 F.Supp. 2d 1283, 1292 (S. D. Fla. 2007). Non-breach is a denial, not an affirmative defense. *See Losada*, 296 F.R.D. at 690. Therefore, these affirmative defenses fail as a matter of law.

Defendants' affirmative defenses regarding Plaintiff's failure to mitigate damages, consent and acquiescence to the use of the Metatags, and estoppel are directly addressed by the C&D Letter. The C&D Letter clearly shows that Plaintiff did not consent or acquiesce to the Defendants' use of the Metatags on the Website; it specifically references the Agreement and its position that these actions are in violation of the Agreement. In response, Defendants agreed to stop using the Metatags on the Website, and they offer no evidence in opposition to this Motion to contradict MLC's position, to disavow the statements made in the Response Letter or to otherwise explain why they have since changed their position on the subject.

The defenses that assert that MLC's marks are not entitled to trademark protection, that MLC fraudulently obtained the trademark from the U.S. Patent and Trademark Office and that MLC misused its mark were waived in the Agreement when Defendants agreed to

14

the "validity and enforceability of MLCC's Trademarks-in-Suit" and this Court entered the Consent Order finding the Trademarks-in–Suit to be "valid and enforceable under the Lanham Act and the common law of the State of Florida." Defendants do not contest that the Agreement is valid and enforceable, and otherwise do not offer any record evidence regarding these defenses.

Finally, to the extent not previously addressed, the remainder of Defendants' affirmative defenses do not raise a genuine issue of material fact as to MLC's entitlement to partial summary judgment on the breach of contract claim because they do not rely on any record evidence in support of these purported defenses. *See Real Estate Mortg. Network, Inc*, 2012 WL 1581967, at *2.

## *Conclusion*

The Court concludes that the Defendants use of the capitalized phrase "Meth Lab Cleanup," which is confusingly similar to MLC's Trademarks-in-Suit, in the Metatags on the Website www.MethLabServices.com is not protected activity under the safe harbor and is therefore a breach of the Confidential Settlement Agreement. Therefore, the Defendants must remove and are enjoined from using the Metatags on the Website or the capitalized phrase "Meth Lab Cleanup" or any confusingly similar phrases on any other website. The Court denies MLC's request to enjoin the Defendants from creating or using any domain name using the terms "Meth", "Lab", or "Cleanup" since the terms of the Agreement did not contain such a limitation. The Court will determine actual damages and attorney's fees and costs after further briefing on those issues.

It is therefore **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. #30) is **GRANTED**.

15

2. Plaintiff may file its motions for costs and attorney's fees and for actual damages within fourteen (14) days after the Court resolves the remainder of Plaintiff's claims and Defendants' Amended Counterclaims and Third Party Complaint by final judgment or otherwise.

**DONE** and **ORDERED** in Tampa, Florida, this 23rd day of July, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2014\14-cv-3129 mpsj 30.docx