**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

METH LAB CLEANUP, LLC,

      Plaintiff,

v.                                    Case No: 8:14-cv-3129-T-30TBM

SPAULDING DECON, LLC and
LAURA SPAULDING,

      Defendants.

_____

## <u>ORDER</u>

Plaintiff Meth Lab Cleanup, LLC ("MLCC") and Defendants Spaulding Decon, LLC and Laura Spaulding (collectively "Spaulding") are competitors in a niche service industry, and they have been bellicose adversaries in litigation that is now entering its sixth year. In this lawsuit, MLCC alleges that Spaulding breached a contract that settled a previous lawsuit between them. Spaulding counterclaims that, in fact, MLCC breached the contract and that, further, MLCC violated the Lanham Act, 15 U.S.C. §§ 1051-1141n, by engaging in unfair competition and by falsely advertising. Spaulding's counter-claim also seeks declaratory relief. Before the Court are the parties' cross motions for partial summary judgment (Dkts. 84 and 89) and their respective responses in opposition (Dkts. 94 and 100). The Court has carefully reviewed the pleadings, evidence, and applicable law. As specified below, the Court concludes that Plaintiff's and Defendants' motions should be granted in part and denied in part.

## FACTUAL BACKGROUND

MLCC and Spaulding compete in the drug-lab and crime-scene decontamination business, and MLCC first sued Spaulding in 2010 for copyright and trademark infringement. The case, styled *Meth Lab Cleanup, LLC v. Spaulding Decon, LLC and Laura Spaulding*, Case No. 8:10-cv-2550-T-30TGW (the "First Lawsuit"), centered on MLCC's assertion that Spaulding had infringed on its protected trademark: "METH LAB CLEANUP LLC" (the "Trademark" or "Mark").

MLCC and Spaulding entered into a Confidential Settlement Agreement (the "Agreement") to settle the First Lawsuit. As stated in the Agreement and asked for by the parties in a joint motion, this Court entered a Consent Final Order finding the Trademark to be "valid and enforceable under the Lanham Act and the common law of the State of Florida." Thereafter, the First Lawsuit was dismissed, and the relationship between MLCC and Spaulding became chiefly a matter of contract law, governed by the terms of the Agreement.

### Relevant Provisions of the Agreement

The Agreement is divided into three major sections: the Recitals, the Definitions, and the Terms of Agreement. Paragraph K of the Recitals states that "[b]y entering into this Agreement, the Parties agree to the validity and enforceability of MLCC's [Trademark] . . . as [] defined below." The first entry in the Definitions section defines the Trademark as "**METH LAB CLEANUP LLC**," thrice registered with and issued by the U.S. Patent and Trademark Office ("USPTO") (emphasis in original). That section also specifies that,

in the Agreement, the term "Spaulding Websites" refers to www.Meth-LabCleanup.com and www.SpauldingDecon.com, two websites that were owned and operated by Spaulding.

The Terms of Agreement section contains seven provisions that are now relevant. The first provision is Paragraph 2, which is Spaulding's broad agreement not to challenge or contest MLCC's USPTO-protected Trademark or any future trademark applications "that include the term **METH LAB CLEANUP**." (Dkt. 52, p. 5) (emphasis in original). Paragraph 2 similarly binds any of Spaulding's "related consultants, contractors, employees, agents, subsidiaries, related companies, successors and representatives."

The second provision is Paragraph 7(b), which is an even broader restriction on Spaulding's future conduct: it restricts Spaulding, or any "others employed by or representing [Spaulding]," from performing "any act or thing which is likely to injure Plaintiff MLCC, [the Trademark], and/or Plaintiff MLCC's business reputation or goodwill." (Id.).

The third and fourth provisions are Paragraphs 7(a) and 7(d), both of which aim to protect MLCC's Trademark. Paragraph 7(a) restricts Spaulding from "making any use of" the Mark, "METH LAB CLEANUP LLC," or "any intellectual property that is confusingly or substantially similar to, or that constitutes a colorable imitation of [METH LAB CLEANUP LLC]." Restricted uses include those in a "trade name, logo, Internet use, website, domain name, metatags, advertising, [or] promotions." (Dkt. 52, p. 7). Paragraph 7(d) prohibits Spaulding from using the Mark or "the common law mark METH LAB CLEANUP" on any internet domain name or website.

The fifth provision is Paragraph 8, which excepts one use from the restrictions in Paragraphs 7(a) and 7(d). This exception permits Spaulding to use the term "meth lab cleanup," in all lowercase letters, to generally describe its services and further states that such use does not constitute intellectual property infringement. (Dkt. 52, p. 8).

The sixth provision is Paragraph 13, a reciprocal duty of confidentiality. "This Agreement … shall be held in strict confidence," it states. More specifically, "the parties agree that they shall not make any public comment with regard to this Agreement …." This duty of confidentiality does not apply, however, to the Court's Consent Final Order, which did not specify the terms but did refer to the Agreement. Paragraph 13 also contains the parties' agreement "to not disparage, defame or slander each other with regard to their services, advertising, training, credentials, training [sic], certification or related business activities." (Id.).

Lastly, the seventh provision is Paragraph 14, a restriction against Spaulding that applies specifically to domain names. It states: "[Spaulding] (as well as their agents, representatives, consultants and contractors) are prohibited from using any form of domain name (URL) having the terms **METH LAB CLEANUP**, including any derivative of such potential domain name (regardless of use of slashed or other additions)." (emphasis in original).

MLCC and Spaulding also agreed that Florida law applied to the Agreement and that the Middle District of Florida would retain jurisdiction over any enforcement actions. The Court entered its Consent Final Order on April 11, 2012, and the Agreement, with

these governing terms, went into effect. The litigation ended, and the parties resumed their previous relationship as merely business competitors.

But the peace would be short-lived, and the parties would soon be—once again—on a course for the courthouse.

**MLCC's Allegations of Interference and Breaches of the Agreement's Use Restrictions**

In September 2013, Spaulding took part in a meeting of the American Bio Recovery Association (ABRA), which was attended by representatives of other companies in the crime-scene cleanup and drug-lab decontamination industry. There, MLCC alleges, Laura Spaulding advocated the filing of a lawsuit against MLCC for the purpose of cancelling MLCC's Trademarks. (Dkt. 100, p. 5). As support for the allegation, MLCC supplies the declaration of attendee Peter Riley, president and owner of Crystal Clean Decontamination. In the declaration, Riley claims that he overheard Laura Spaulding advocating for a challenge to MLCC's Trademarks. (Dkt. 102). Riley's declaration also states that, at the ABRA meeting, Laura Spaulding discussed MLCC's lawsuit against her, characterized the result as her having "lost the lawsuit," and told attendees that, despite losing, she had not changed anything on her website. (Dkt. 102, p. 2).

Spaulding disputes this claim and, as its own support, supplies the ABRA meeting minutes, which do not specifically identify Spaulding as having participated in any such discussion. Spaulding also supplies the declarations of Laura Spaulding and another attendee, Theresa Borst, who owns Bio Clean, Inc. Borst and Bio Clean work in the same industry and are defendants in a different lawsuit against MLCC in the United States

District Court for the Western District of Washington. The Borst and Spaulding declarations state that a conversation about MLCC's Trademarks did take place at the ABRA meeting, but that Spaulding did not participate. (Dkts. 89-5, 89-7).

In May 2014, MLCC learned that the website www.methlabservices.com, operated by Spaulding, contained in its metatags the phrase "Meth Lab Cleanup," so capitalized. MLCC, believing that this use of the phrase violated the Agreement's Paragraph 7 use restrictions, sent Spaulding a cease and desist letter.

Spaulding's counsel responded and stated that Spaulding would "remove . . . any and all headers, metatags, and related content from www.MethLabServices.com, as well as any related internet information used for search engine optimization regarding the term "Meth Lab Cleanup or colorable imitation thereof[.]" The response also stated that "Spaulding intends to comply with the terms of the [] Agreement."

But Spaulding had a change of heart and determined that its use of "Meth Lab Cleanup" did not violate the agreement. This change of heart, MLCC alleges, was the proverbial final straw that caused it to file this lawsuit.

**Spaulding's Allegations of Confidentiality Breaches, Disparagement, and False Advertising**

MLCC sent cease and desist letters to other industry competitors. Spaulding takes issue with four of these communications; with each one, Spaulding alleges, MLCC violated the Agreement.

The first communication occurred in July 2013, when MLCC's counsel sent a letter to Donetta Held, owner and president of Crisis Cleaning, about her use of "meth lab

cleanup" on her website. The letter stated: "the United States District Court for the Middle District of Florida, in Case No. 8:10-CV-2550-T-30TGW, noted in a 2012 judgment that MLCC's mark METH LAB CLEANUP was distinctive." (Dkt. 89-9, p. 2). To Spaulding, this letter violated Paragraph 13's confidentiality provision. To MLCC, which admits to sending the letter, the letter mentions the case and the Court's order, not the Agreement, and thus does not violate the Agreement.

The second communication occurred sometime in 2014 or 2015, when MLCC employee Joseph Mazzuca had a telephone conversation with a mutual client of MLCC and Spaulding. (Mazzuca Dep. p. 149; Dkt. 89-1, p. 39). In that conversation, Mazzuca first accused the client of stealing MLCC's work product, specifically the style and format of MLCC's service proposals. Then the client informed Mazzuca that the service proposals were not the client's, but were in fact produced by a mutual provider, i.e. an MLCC competitor, whose name the client did not feel comfortable disclosing. The tone of the conversation then shifted, and Mazzuca and the client engaged in a short discussion in which the client criticized the competitor and stated that he would terminate his business relationship with them. According to Mazzuca's deposition, the only evidence of this conversation, the client—not he—discussed the competitor, whom he believed to be Spaulding. But, he further testified, Spaulding's name was never mentioned. (Mazzuca Dep., p. 152, Dkt. 89-1, p. 39).

In its motion, Spaulding asserts that Spaulding, though unnamed throughout, was the subject of this critical conversation, and that the conversation amounted to disparagement, also in violation of Paragraph 13. MLCC disagrees.

The third communication occurred in November 2015, in the throes of MLCC's lawsuit with Borst and Bio Clean in Washington. In that case, MLCC filed the Agreement with the Court. Spaulding alleges that this disclosure violates Paragraph 13's confidentiality provision of the Agreement.

MLCC responds in two ways. It argues, first, that context matters, and that Paragraph 13's confidentiality provision permits disclosures in response to a "legal or administrative process," which the Washington litigation is. And second, it notes that this excepted disclosure of the Agreement came in response to mischaracterizations of the Agreement Borst made in her own declaration—mischaracterizations that could have only been known if Spaulding had first disclosed the terms of the Agreement to her.

The fourth communication involved not a cease-and-desist letter, but an email exchange, with another industry competitor, Kirk Flippin of Texas Decon. MLCC president Julie Mazzuca began the exchange on the morning of January 5, 2015, with the following: "You are next Kirk." Flippin replied, and several more emails were exchanged throughout that day, to include Mazzuca's allegation, "You are using my trademark to sell your services. It is against the law." But the critical email, according to Spaulding, is this one—from Mazzuca to Flippin, sent Tuesday January 6, 2015 at 3:04 p.m.:

> Call a lawyer Kirk. I will not educate your webmaster. Didn't
> you already experience a lawsuit with Spaulding in which she
> lost?????????????????????????????????????? [sic]

(Dkt. 89-9, p. 3). Spaulding submits a copy of this email, as well as the longer chain it is a part of, as evidence supporting that MLCC, not Spaulding, disparaged the other and disclosed settlement terms, both violations of Paragraph 13.

MLCC responds in a few ways. First, it says that the email is a fraud. As support, MLCC provides a copy of what it alleges to be the accurate email chain. The contents of that chain are identical in all but one respect. In the MLCC version, the email from Mazzuca to Flippin, also sent Tuesday January 6, 2015 at 3:04 p.m. says:

> I will be seeking damages; have successfully.

(Dkt. 86-3, p. 8). MLCC argues that it has supplied the accurate version and that Spaulding's is unreliable hearsay.

MLCC next argues that the dispute over which email is the real one is irrelevant—because neither one violates the Agreement. Even Spaulding's version, MLCC argues, falls short of the kind of disparagement or disclosure prohibited by Paragraph 13.

Lastly, MLCC argues that the date on which the email exchange took place is dispositive: in January 2015, Spaulding had already violated the Agreement, after which MLCC was no longer legally bound by the Agreement's terms.[1]

Finally, in 2014 MLCC began promoting its business in Florida. It did this, primarily, with the creation of the website www.floridamethlabcleanup.com. The website contains assertions that Spaulding argues amount to false advertising in violation of the Lanham Act. Among those assertions are the following: that Florida Meth Lab Cleanup is

---

[1] *See* Dkt. 84, p. 23 (citing *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 852 (11th Cir. 2013) ("a material breach excuses a party from performance of the contract . . . .")). MLCC points to Dkt. 39, an earlier order that granted MLCC partial summary judgment and found that Spaulding had been in violation of the Agreement as of May 2014. *See* Procedural History section of this Order.

a Florida company; that it has been in business since 2003; and that it has four Florida locations.

MLCC admits to these factual allegations, but argues that the facts, even when combined with the other evidence gathered through discovery, fall short of establishing the elements of a false advertising claim.

### MLCC's Complaint

MLCC filed this lawsuit in December 2014. Although styled as a one-count breach-of-contract claim, MLCC's complaint in fact alleged five discrete breaches of the Agreement. Summarized, those alleged breaches are:

(1) Breach 1, urging cancellation of MLCC's Trademarks at the ABRA meeting in violation of Paragraphs 2 and 13 of the Agreement;

(2) Breach 2, disparaging MLCC and performing acts likely to injure MLCC and its Trademarks in violation of Paragraphs 2, 7, and 13—specifically, by assisting Theresa Borst and her company, Bio Clean, in their defense of a lawsuit MLCC filed against them and in their petition with the USPTO to cancel MLCC's Trademarks;

(3) Breach 3, using the website domain name www.methlabservices.com in violation of Paragraphs 7 and 14;

(4) Breach 4, use of the phrase "Meth Lab Cleanup" on the Spaulding Websites and in their metatags in violation of Paragraph 7; and

(5) Breach 5, disclosing the terms of the Agreement in violation of Paragraph 13.

(Dkt. 1). Because any one material breach of a contractual obligation is sufficient to prevail on a breach of contract claim,[2] the Court will treat each breach as a separate count in

---

[2] Provided that the other elements of a breach of contract claim are established. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (applying Florida law).

MLCC's complaint. (But, in an effort to distinguish these from the six counts raised in Spaulding's counterclaim, the Court will continue to refer to each as a "Breach").

### *Spaulding's Counterclaim*

Spaulding's counterclaim contains the following six counts:

(1) Count 1, seeking a declaratory judgment that Spaulding's use of the phrase "meth lab services" does not infringe on MLCC's Trademarks, statutory or common law, and does not violate the terms of the Agreement;

(2) Count 2, alleging that MLCC unfairly competed in violation of the Lanham Act by asserting that it has exclusive intellectual property rights in the phrase "meth lab services" and by making false and derogatory statements about Spaulding;

(3) Count 3, alleging that MLCC falsely advertised in violation of the Lanham Act by operating the website www.floridamethlabcleanup.com and in other ways misleading the public into believing it was a Florida company;

(4) Count 4, alleging that MLCC violated the confidentiality provision of the Agreement;

(5) Count 5, alleging that MLCC violated the Agreement when it threatened to sue—and later did sue—Spaulding for its use of the phrase "meth lab cleanup," which the Agreement authorized (although this count did not specify whether Spaulding capitalized any of the letters in the phrase in its post-Agreement uses, a fine but critical distinction that would become relevant on a later summary judgment motion); and

(6) Count 6, alleging that MLCC violated the Agreement when it later disparaged Spaulding.

### PROCEDURAL HISTORY

In May 2015, MLCC moved for partial summary judgment—specifically, on Breach 4 in the complaint. The motion supplied evidence proving that Spaulding was using the phrase "Meth Lab Cleanup," so capitalized, in the metatags on the website www.methlabservices.com. (Dkt. 30). The motion argued that this use was intellectual

11

property infringement and that it violated Paragraph 7 of the Agreement.[3] Spaulding conceded that it used the phrase as alleged, but disputed that the use infringed or violated the Agreement.

The Court agreed that the use of the phrase violated the Agreement (Dkt. 39). In the summary judgment order, the Court referred briefly to trademark law to ascertain the parties' intent when they used, in Paragraph 7, the description "confusingly or substantially similar to," which is language adopted from the Lanham Act and its case law. The Court also recognized that this task, ascertaining the intent of contracting parties, requires examining "disputed terms in the context of the entire agreement, giving words their plain and ordinary meaning as understood by a reasonable person." (internal citation and quotation marks omitted). With this guidance, the Court concluded that the capitalized phrase "Meth Lab Cleanup," be it on a website or in metatags, was, as the parties intended, "confusingly or substantially similar to" MLCC's Trademark, "METH LAB CLEANUP LLC." The Court later noted how the Agreement, read in its entirety, would lead a reasonable person straight to this conclusion: "The [A]greement's Safe Harbor provision [in Paragraph 8] allows [Spaulding] to use 'meth lab cleanup' to describe their services. Yet if this use, 'meth lab cleanup,' was not confusingly similar to 'Meth Lab Cleanup LLC,' there would be little need for the extra provision." (Dkt. 63, p. 11).

---

[3] As will be discussed more thoroughly below, both MLCC and Spaulding often mischaracterize MLCC's complaint as one for trademark or intellectual property infringement. The complaint is one for breach of contract exclusively. *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n. 4, 96 S. Ct. 1202 (1976).

In granting MLCC's motion, the Court enjoined Spaulding from use of the phrase "Meth Lab Cleanup," in any letter case configuration except all lowercase, on any websites operated by Spaulding or in any of those websites' metatags. (Dkt. 39, p. 15; Dkt. 63, pp. 11-12).

The Court, however, expressly confined this holding in a few important ways. First, the Court held that Spaulding's use of "meth lab cleanup," in lowercase letters, on any website or metadata, did not violate the Agreement. (Dkt. 39, p. 15; Dkt. 70, p. 2). This limitation was motivated, in part, by three factors: (1) on the Agreement's Paragraph 8, which permitted Spaulding's use of "meth lab cleanup" to describe its services; (2) on the generic nature and common use of the phrase, particularly the term "meth lab;"[4] and (3) on a provision in the Agreement stating that, before January 26, 2012, the Spaulding website www.spauldingdecon.com was free of intellectual property infringement, coupled with evidence suggesting that "meth lab cleanup," so capitalized, was in the website's metatags before that critical date.

Second, the Court denied the portion of MLCC's motion that sought to enjoin Spaulding from using a domain name with any of terms "Meth," "Lab," or "Cleanup," or

---

[4] Indeed, by 2014 the acclaimed television show *Breaking Bad* had become the most binge-watched show in T.V. history, according to *Time*. *See* Abby Abrams, *Breaking Bad Is the Most Binge-Watched TV Show Ever, Study Finds*, TIME, June 25, 2014, *available at* http://time.com/2924105/breaking-bad-is-the-most-binge-watched-tv-show-ever-study-finds/. It logically follows that the show's major plotline—the 'cat-and-mouse' chase between the Drug Enforcement Administration and participants in the illegal methamphetamine business that necessitates, on the part of the illicit entrepreneurs, the use of evermore clandestine and elusive manufacturing laboratories to evade DEA detection (like an RV, to use just one example from the show)—has gained at least as much in familiarity as the show has in popularity, which is to say that the term "meth lab," in American folk parlance at least, is nearing ubiquity.

any confusingly similar terms. The Agreement, the Court held, did not contain such a broad use restriction. (Dkt. 39, p. 15).

Spaulding later moved for partial summary judgment on Count 5 of its counterclaim (Dkt. 57). The motion sought a judgment that, because Spaulding, per the Court's previous order, was permitted to use the phrase "meth lab cleanup," MLCC violated the Agreement by sending Spaulding cease and desist letters and ultimately filing this lawsuit. MLCC opposed the motion and sought its own summary judgment on that Count.

The Court again agreed with MLCC (Dkt. 49), holding that the previous summary judgment order made it "clear that [Spaulding was] at least partially in breach of [the Agreement.]" Threatening to sue and suing Spaulding for that breach did not violate the Agreement. Judgment on Count 5 of Spaulding's counterclaim was entered in MLCC's favor.

With these summary judgment orders, the Court was left to resolve the following claims:

- For MLCC: Breaches 1-3 and Breach 5
- For Spaulding: Counts 1-4 and Count 6

## DISCUSSION

Now the parties again move for partial summary judgment. MLCC seeks judgment on all of Spaulding's remaining counterclaims—Counts 1 through 4 and Count 6. Spaulding opposes that motion and seeks summary judgment on all of MLCC's remaining Breaches—Breaches 1 through 3 and Breach 5—and on all but Count 1 of its counterclaim.

After detailing the summary judgment standard, the Court will evaluate MLCC's alleged Breaches and then Spaulding's Counts.

But first, it is clear that the long duration and quarrelsome tone of this litigation— which, to date, has involved a motion for contempt, volleyed accusations of discovery violations, and an allegation of evidence tampering—has distracted the parties.[5] The Court will take a moment to properly frame this dispute.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). MLCC's complaint makes no such statement referring to any right to relief except rights born out of contract law— specifically, the Agreement. The complaint is styled as having only one count, a "Breach of Confidential Settlement Agreement." Later, in the prayer for relief, the complaint asks the "Court to enter judgment against [Spaulding] that [Spaulding] breached paragraphs 2, 7(a), 7(d), 13, and 14 of the Confidential Settlement Agreement . . . ." The complaint does not seek any relief under the Lanham Act or any other intellectual property law.

Yet MLCC, at various points in this litigation, has miscast its arguments by invoking trademark law as entitling it to relief. And Spaulding, for its part, has taken the bait. The Court has already stated that the language of trademark, when it comes to evaluating

---

[5] Which, in turn, distracts and frustrates the Court.

MLCC's complaint, is relevant only insofar as it helps the Court interpret the terms of the Agreement and the parties' intent when they entered into that Agreement. MLCC's complaint alleges breaches of contract and seeks relief under contract law exclusively; the Court's analysis will be similarly constrained. *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n. 4, 96 S. Ct. 1202 (1976) ("[A] complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief.").

Spaulding, however, properly alleged violations of trademark law in Counts 1, 2 and 3 of its counterclaim, and the Court will resort to that law, as appropriate, when evaluating those counts.

### Summary Judgment Standard

A motion for summary judgment forces a court to "pierce the pleadings and [] assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Motions for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue over any material fact and that the moving party is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The existence of any factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; rather, the record must reveal a "*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986) (emphasis in original). Facts are material if, under the applicable substantive law, they might affect the outcome of the case. *See id*. And disputes over those facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*.

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the relevant documents that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). To carry this burden, the moving party can present evidence to this effect or instead show that the non-moving party has failed to present evidence in support of some element of its case on which it ultimately bears the burden of proof. *Id.* at 322-23.

If the moving party meets its burden, the non-moving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. Conclusory allegations will not suffice. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Neither will "a mere scintilla of evidence supporting" the non-movant's claims. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted). The non-movant must instead present facts that are significantly probative to support those claims. *Anderson*, 477 U.S. at 248-49 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968) (requiring that "sufficient evidence supporting the

17

claimed factual dispute be shown to [defeat the motion and] require a jury or judge to resolve the parties' differing versions of the truth")).

A court ruling on a motion for summary judgment must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson,* 477 U.S. at 255. After the non-moving party has responded to the motion, the court must grant summary judgment if there exists no genuine issue of material fact and the moving party deserves judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

## MLCC's Complaint

### Breaches 1 and 2

Paragraph 2 of the Agreement prohibits Spaulding, or any "related companies" or "representatives" (though these terms are not defined), from opposing or seeking to challenge any filings or applications before the USPTO. Paragraph 7(b) is even broader; it prohibits Spaulding or "any person or entity acting in concert with [Spaulding]," from performing "any act or thing which is likely to injure [MLCC, its Trademark], and/or Plaintiff MLCC's business reputation or goodwill." MLCC claims that Spaulding violated these provisions when, at an ABRA meeting attended by other members of their industry, Laura Spaulding openly encouraged the filing of a challenge to MLCC's Trademark before the USPTO.

In response, Spaulding cites Federal Rule of Evidence 802 and argues that both claims must fail, as a matter of law, because no admissible evidence could support them. This argument plainly fails.

Federal Rule of Civil Procedure 56(c)(2) does call for summary judgment when the fact(s) cannot be presented in a form that would be admissible at trial. In other words, at the summary judgment stage, the evidence "does not have to be admissible under the Federal Rules of Evidence," but it must be evidence that can be "reduced to an admissible form at trial." *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996).

Hearsay, as Spaulding notes, is one form of evidence that might be inadmissible at trial. *See* Fed. R. Civ. P. 802; *but see* Fed. R. Civ. P. 803 and 804 (exceptions). Spaulding fails, however, to note that statements made by a party opponent are not hearsay. Fed. R. Civ. P. 801(2).

The evidence that supports MLCC's Breaches 1 and 2 are the statements Laura Spaulding, a party opponent, made at the ABRA meeting. Peter Riley, a meeting attendee, filed a declaration with the Court stating that he heard Ms. Spaulding advocate for the filing of a trademark challenge against MLCC. This declaration can be reduced to admissible trial evidence—that is, direct testimony. In that testimony, Riley could recount, from personal knowledge, the statements he heard Ms. Spaulding utter. Moreover, in the face of Spaulding and Borst's evidence to the contrary, this evidence would raise a genuine question over whether Spaulding violated the Agreement, particularly the broad restraint contained in Paragraph 7(b). *See Anderson*, 477 U.S. at 248.

On Breaches 1 and 2, Spaulding's motion for summary judgment will be denied.

**Breach 3**

MLCC also claims that Spaulding's use of the domain name www.methlabservices.com violates the Agreement, either Paragraph 7 or Paragraph 14.

Paragraph 7(a) broadly prohibits Spaulding's use of the Trademark—"Meth Lab Cleanup LLC"—"or any intellectual property that is confusingly or substantially similar to [Meth Lab Cleanup LLC], or that constitutes a colorable imitation of [Meth Lab Cleanup LLC]." Paragraph 7(d) is narrower. It prohibits Spaulding from using any domain name that includes the Trademark or the common mark "METH LAB CLEANUP." Importantly, this provision does not contain the inclusive disjunction, "*or* any intellectual property that is confusingly or substantially similar," found in 7(a). Paragraph 14 is a similar restriction on domain names, although it is styled differently. It states: Spaulding is prohibited "from using any form of the domain name (URL) having the terms **METH LAB CLEANUP**, including any derivative of such potential domain name (regardless of use of slashed or other additions)."

Spaulding acknowledges the validity of these restrictions, but argues that its use of www.methlabservices.com does not run afoul of any of them. The Court agrees.

As for Paragraph 7(a), the Court has already held—in a previous order, for reasons reiterated earlier in this order—that the restrictions therein do not prohibit the use of "meth lab cleanup" in all lowercase letters. Logic cannot support MLCC's contention that, despite this holding, Paragraph 7(a) prohibits "meth lab services." It does not.

As for Paragraph 7(d), it specifically prohibits *only* the use of the Trademark, which is "Meth Lab Cleanup LLC," and the common law trademark "METH LAB CLEANUP." It requires no explanation to see that "meth lab services" is different.

Paragraph 14 is trickier, by dint of sloppy drafting. Contract interpretation requires courts to apply "the objective meaning of the words used." *Feaz v. Wells Fargo Bank, N.A.*,

745 F.3d 1098, 1104 (11th Cir. 2014) (citing *Moore v. Pa. Castle Energy Corp.*, 89 F.3d

791, 795-96 (11th Cir. 1996)). MLCC and Spaulding used the word "terms" for "Meth Lab

Cleanup." The word is problematic.

*Black's Law Dictionary* defines "term" as "[a] word or phrase." *Oxford English*

*Dictionary* defines it is "[a]ny word or group of words expressing a notion or conception,

or denoting an object of thought." In other words, a singular "term" can be either one word

or a collection of words.[6] By this definition, the parties' use of "terms" suggests that the

words that follow—"METH," "LAB," and "CLEANUP"—were more likely intended as a

list. That is, each word constitutes a single term in a list of terms. And if this was the parties'

intent, then Spaulding's use of any one of the terms—"Meth," "Lab," *or* "Cleanup"—

would violate the provision.

But there is good reason to doubt this interpretation. According to the Eleventh

Circuit, statutory interpretation should not "strain[] ordinary rules of grammar." *Medical*

*Transp. Mgmt. Corp. v. Comm'r of I.R.S.*, 506 F.3d 1364, 1369 (11th Cir. 2007). The Court

sees no reason why contractual interpretation should. *Accord Pelican Ventures, LLC v.*

*Azimut S.p.A.*, No. 03-62119-CV-MARTINEZ, 03-62119-CIV-KLEIN, 2004 WL

3142550, *5 (S.D. Fla. July 28, 2004). According to one of these rules, items in a list must

be separated by commas. Bryan A. Garner, *Garner's Dictionary of Legal Usage*, 731 (3rd

ed. 2011) (arguing for inclusion even of the serial or "Oxford" comma, placed after the

---

[6] Phrase: "A small group of collocation of words expressing a single notion, or entering with some degree of unity into the structure of a sentence." *Oxford English Dictionary* (2d ed. 1989).

penultimate item in the list). As applied to the Agreement, this rule means that reading Paragraph 14 as a list of three prohibited terms is objectively unreasonable, because those terms are not separated by commas.[7]

These competing interpretations of Paragraph 14 suggest that the provision is ambiguous. But contract interpretation is "decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent." *Feaz*, 745 F.3d at 1104. When the Agreement is read in its entirety, MLCC and Spaulding's shared intent is not ambiguous: in Paragraph 14, they meant "Meth Lab Cleanup" as one term, not a list of three. A few considerations illustrate why.

First, apparent conflicts between clauses in a contract should be read so that, as far as possible, they harmonize. *Guaranty Financial Services, Inc. v. Ryan*, 928 F.2d 994, 999-1000 (11th Cir. 1991) (citing *Heryford v. Davis*, 102 U.S. 235, 245, 26 L. Ed. 160 (1880)). In the Agreement's twenty "Terms of Agreement," eleven of them, including Paragraph 14, contain a list of items. In all of them, MLCC and Spaulding used commas to separate the items within the list.[8] In fact, they did so in a list in the very same sentence at issue here. Spaulding, the sentence in Paragraph 14 reads, is not the only party prohibited from using the domain name "**METH LAB CLEANUP**;" so are Spaulding's "agents,

---

[7] This interpretation is buttressed, ironically, by a deeper reading of the dictionary-definitions argument supporting the terms-as-list interpretation. In defining "term," *Black's* adds: "esp[ecially], an expression that has a fixed meaning in some field." And *OED* includes in its definitions: "A word or phrase used in a definite or precise sense in some particular subject, as a science or art." By these definitions, "meth lab cleanup" certainly qualifies as a singular term.

[8] Some of the lists include the serial comma, while some exclude it.

representatives, consultants and contractors." In light of this agreed usage by MLCC and Spaulding, to hear "**METH LAB CLEANUP**" in Paragraph 14 as a list would be dissonant with the Agreement's other lists—and not at all harmonious.

The "list" would sound no better with Paragraph 7. That paragraph starts, in 7(a), with a broad restriction, by adding the disjunctive "or" and two modifying clauses: "*or* any intellectual property *that* is confusingly or substantially similar to [Meth Lab Cleanup LLC], or *that* constitutes a colorable imitation of [Meth Lab Cleanup LLC]." (emphasis added). And the restriction applies to virtually any kind of use, to include "promotions, solicitations, commercial exploitation, television, web-based or any other program, service, or otherwise." In 7(d), the parties narrow their focus to uses in domain or website names. And there, for those uses, the parties do not include the expanding modifiers. Only the Trademark and "METH LAB CLEANUP" are prohibited. In short, the parties sought to significantly narrow the restricted uses if the use occurred in the context of a domain name. Dissonance—not harmony—would again ring out if the Court concluded that the parties made this narrowing choice only to reverse it in Paragraph 14 (with the Agreement's lone comma-less list).

Second, the parties' behavior before and after the execution of the Agreement supports the Court's interpretation. The Agreement defines the "Spaulding Websites," one of which, before the Agreement, was www.Meth-LabCleanup.com. Now, typing that site into a web browser redirects to www.methlabcleanup.com, the homepage for MLCC. This is another powerful clue that MLCC and Spaulding sought to regulate by contract "Meth Lab Cleanup" as one term, not three.

And finally, this behavior helps ascertain the intent behind the last phrase of Paragraph 14's domain-name restriction. On the restriction against using "**METH LAB CLEANUP**" as a domain name, the provision adds, "including any derivative of such potential domain name (regardless of use of slashed or other additions)." As a single term, Spaulding's www.Meth-LabCleanup.com, which was taken down and is now operated by MLCC, would qualify as a derivative—albeit with a dash, not slashed addition. So would www.wearemethlabcleanup.com. And so would www.methlabcleanup.com/forhire.

But www.methlabservices.com does not. If the Court were to conclude otherwise, if the Court were to read the provision as MLCC argues it should, the Court would also have to conclude that the parties intended to prohibit any domain name containing any one of the three words—"Meth," "Lab," or "Cleanup." Such a reading would prohibit domain names completely unrelated to the business in which MLCC and Spaulding are competitors. Names like www.CarCleanupAndDetail.com or www.MothersAgainstMeth.com. And even www.Lab-Rescue.org, the domain name for an organization dedicated to rescuing and finding homes for abused Labrador Retrievers.

The parties did not contract to such a broad restriction, and Spaulding did not violate the Agreement by operating the website www.methlabservices.com. Accordingly, Spaulding's motion for summary judgment on Breach 3 will be granted.

**Breach 5**

In the complaint's final alleged breach, MLCC claims that Spaulding violated Paragraph 13's confidentiality provision "by disclosing the terms of the [Agreement]." But MLCC supplies little evidence to support this claim. In fact, the only evidence in the record

that could possibly support it is a declaration filed by MLCC's counsel in the Washington Borst litigation which explains why MLCC filed, in that case, a copy of the Agreement. The declaration states that the filing was necessary to rebut Borst's mischaracterization of the Agreement. Here, in response to Spaulding's motion, MLCC argues that Borst could have only mischaracterized the Agreement if Spaulding had disclosed its terms to her.

This is an inferential leap too far. First, it assumes that a mischaracterization is necessarily caused by a miscommunication when it might reflect the fact that there was no communication at all, but rather mere guesswork. And second, it pays no mind to the innumerable ways one might come to learn the terms of an agreement that was supposed to remain confidential, only one of which is intentional disclosure. The most MLCC's evidence shows is that Borst *might* have known the terms of the Agreement, and if she did, a Spaulding disclosure *might* have been the reason why. [9] No reasonable jury could find Spaulding liable with this evidence. *See Anderson*, 477 U.S. at 248. Summary judgment in favor of Spaulding will be granted on Breach 5.

---

[9] The Court notes that the Agreement's Paragraph 13 contains a broader confidentiality restriction. It states: "the Parties agree that they shall not make any public comment with regard to this Agreement, *the various litigations and proceedings* . . . ." (emphasis added). Other facts presented in this case—namely, Laura Spaulding's discussion of the First Lawsuit at the ABRA meeting—may have fallen within the ambit of this broader restriction. But MLCC confined Breach 5 to a claim that Spaulding disclosed "the terms of the [Agreement]" and its response to Spaulding's motion does not address this broader provision in Paragraph 13. In fact, the response does not at all address Spaulding's challenge to Breach 5. MLCC made this choice "at its peril." *Alilin v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-1183-Orl-41DAB, 2014 WL 7734262, *6 (M.D. Fla. Jan. 30, 2014) ("the Court will not on its own raise arguments to counter the defendant's case") (internal quotation marks and citations omitted).

**Order to Show Cause**

As discussed above, MLCC may proceed on Breaches 1 and 2 of its complaint. It is not clear, however, that MLCC wants to do so. In both its response to Spaulding's summary judgment motion and its own cross motion, MLCC attacks Spaulding's counterclaim but spends little time defending the breaches remaining in its complaint. MLCC neither asks for judgment on those breaches in its motion nor argues that there are genuine issues of fact as to them in its response to Spaulding's motion.[10] And yet, in the introduction to its motion (Dkt. 84, p. 2), MLCC argues that there are no "triable issues of material fact *in this action*, other than as to the amount of Plaintiff's damages and attorney's fees and costs." (Id.) (emphasis added).

This argument, of course, assumes that MLCC will prevail as a matter of law on all counts in Spaulding's counterclaim (it will not). But it also suggests that MLCC has abandoned its remaining breaches. MLCC will be ordered to clarify whether they intend to proceed with, or abandon, Breaches 1 and 2.

**Spaulding's Counterclaim**

**Count 1**

In Count 1 of its counterclaim, Spaulding seeks a declaratory judgment that its use of the phrase "meth lab services" does not constitute trademark infringement, does not

---

[10] Oddly, MLCC's response to Spaulding's motion does ask for judgment in MLCC's favor on Breaches 1 and 2—stating, "MLCC's evidence shows the lack of a genuine issue of material fact regarding [Spaulding's] violations"—even though MLCC never moved for summary judgment on those Breaches. In any event, as discussed above, that request is denied on the merits.

constitute unfair competition under the Lanham Act, and does not violate the Agreement. (Dkt. 32, p. 11). MLCC seeks summary judgment on this count, but confines its argument to what it calls "the sole issue": whether Spaulding's use of "meth lab services" violated the Agreement. (Dkt. 84, p. 7).

MLCC's characterization of the argument, however, is only conditionally correct. If the Court had found that "meth lab services" did violate the Agreement, MLCC would have been right, and MLCC would have been entitled to summary judgment on what it correctly describes as a broad claim for declaratory relief. But the Court concluded, in the discussion above, that "meth lab services" does not violate the Agreement, and thus the issues broaden.

MLCC does not argue those issues, and the Court will not make the arguments for the parties. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment. Rather, the onus is upon the parties . . . ."). MLCC's motion for summary judgment on Count 1 will be denied.[11]

**Count 2**

Spaulding next claims that MLCC has competed unfairly, in violation of the Lanham Act, 15 U.S.C. § 1125(a), by asserting exclusive rights to the phrase "meth lab

---

[11] Many of the issues that do remain in Count 1 are questions of fact. *See N. Am. Med. Corp. v. Axiom Worldwide Inc.*, 522 F.3d 1211, 1216 (11th Cir. 2008) (reviewing district court's findings of fact in trademark infringement and false advertising case). On the facts relevant to Count 1, the Court will advise Spaulding: the record is light.

services" and by making derogatory statements about Spaulding. Both parties move for summary judgment on this count.

And yet, amazingly, Spaulding's motion does not cite a single legal authority as supporting its theories of liability under the Act. (Dkt. 89, pp. 10-12). In fact, it cites no legal authority at all. (Id.).

This absence of authority is not surprising, as Spaulding's Count 2 has no merit. It is a claim that MLCC violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). As MLCC points out in its motion, in order to prevail on such a claim, a plaintiff must prove two elements: (1) that he had enforceable trademark rights in the mark or name at issue; and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two. *Caldwell v. Compass Entertainment Group LLC*, Case No. 6:14-cv-1701-Orl-41TBS, 2015 WL 8772909, *10 (M.D. Fla. Dec. 15, 2015) (citing *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007)).

It is undisputed that Spaulding does not have a registered trademark for "meth lab services." It is equally clear that Spaulding never asserts common law trademark rights to the phrase. And even if Spaulding had, there is no evidence in the record to support this assertion. For this reason alone, Count 2 must fail.

The Court has already held that Spaulding's use of "meth lab services" does not violate the Agreement. It is also true, however, that MLCC's assertion that it did does not violate the Lanham Act. MLCC's motion for summary judgment on Count 2 will be granted.

**Count 3**

Spaulding next claims that MLCC's use of the website www.floridamethlabcleanup.com and assertions MLCC made on the website constituted false advertising in violation of the Lanham Act. MLCC concedes the facts as alleged, but argues that Spaulding's evidence fails to establish a claim for false advertising and that, accordingly, Count 3 should be dismissed as a matter of law. The Court agrees.

To prevail on a false advertising claim under the Lanham Act, a plaintiff must prove five elements: (1) that the advertisements of the defendant were false or misleading; (2) that the advertisements deceived, or had the capacity to deceive, consumers; (3) that the deception had a material effect on purchasing decisions; (4) that the misrepresented product or service affects interstate commerce; and (5) that the movant has been or is likely to be injured as a result. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

Spaulding has argued that MLCC's Florida website was literally false. If the Court accepts this argument, Spaulding would not have to present evidence of consumer deception. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010) (internal citations omitted). Spaulding would, however, still have to establish the materiality of the deception and the remaining elements. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002).

The Court will assume without deciding the literal falsity of the website. Summary judgment will be granted on the grounds that on this third element, materiality, the record is devoid of evidence.

In fact, Spaulding at times treats the materiality element as a pleading requirement, arguing in its response to MLCC's motion that Spaulding "can prove the elements" and "has correctly alleged that through the false advertising it has suffered commercial and economic losses." (Dkt. 94, p. 11). While this allegation may be sufficient to overcome a motion to dismiss, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), to survive summary judgment Spaulding needs probative evidence. *See Anderson*, 477 U.S. at 248-49.

The only relevant evidence Spaulding supplies—and it is only marginally relevant—is a Laura Spaulding declaration in which she states that Spaulding's Florida business decreased in 2014 after the creation of www.floridamethlabcleanup.com and her "belie[f]" that this decrease was caused by MLCC's new website. (Dkt. 94-1, p. 2). For one, this speculative, conclusory opinion would likely be inadmissible at trial. *See* Fed. R. Evid. 602. And even if it were admissible, it could not convince a reasonable juror that MLCC's Florida website had a material effect on consumers' purchasing decisions. *See Anderson*, 477 U.S. at 248-49.

Ironically, Ms. Spaulding's declaration—the same one Spaulding relies on as proof—illustrates this latter point. In it, she testifies to losses of business, in the same 2014 timeframe, in other parts of the country for reasons unrelated to MLCC's Florida website. She lost business in Texas, for example. And she lost two other major clients. These losses in various parts of the country raise grave doubts about the purported cause of Spaulding's Florida losses, despite Ms. Spaulding's belief.

While it is true that materiality can be established by proving that advertisements "misrepresent[] an inherent quality or characteristic of the product," *1-800 Contacts*, 299 F.3d at 1250 (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)), Spaulding never makes this claim, let alone supplies evidence to support it. In fact, Spaulding concedes that MLCC did perform its services in Florida, through contractors, and that the services were generally the same as those advertised—drug lab decontamination. (Dkt. 89, p. 15).

While Spaulding may have stated a claim for false advertising under the Lanham Act, they have failed to provide enough evidence to prove the claim to a reasonable juror. *See Anderson*, 477 U.S. at 248-49. On Count 3, MLCC's motion for summary judgment will be granted.

## Counts 4 and 6

As MLCC did in its complaint, Spaulding claims that MLCC made unauthorized disclosures and disparaged Spaulding in violation of Paragraph 13 of the Agreement. Both parties have moved for summary judgment on these counts.

On Count 4's unauthorized disclosure claim, there are in fact two relevant provisions in Paragraph 13. The first states that the Agreement "shall be held in strict confidence." But there are two exceptions: (1) the Court's Consent Final Order is excluded from the requirement; and (2) the requirement "is inapplicable to any party responding to a subpoena or other legal or administrative process." The second states that Spaulding and MLCC "agree that they shall not make any public comment with regard to this Agreement, the various litigations and proceedings . . . ."

Spaulding alleges that MLCC violated at least one of these provisions on four occasions:

1. In July 2013, when MLCC sent a cease-and-desist letter to Crisis Cleaning's Donetta Held and, in it, referred to the First Lawsuit and the Consent Final Order;

2. Sometime in 2014 or 2015, when MLCC employee Joseph Mazzuca had a telephone conversation with a mutual client and, in that conversation, complained about Spaulding without naming it;

3. In November 2015, when MLCC filed a copy of the Agreement in the Washington Borst litigation; and

4. In January 2015, when MLCC owner Julie Mazzuca sent threatening emails to an industry competitor and, according to Spaulding's evidence, referred to the First Lawsuit and characterized Spaulding as having "lost" it.

As an issue of fact, MLCC disputes only one of the emails in the November 2015 exchange and argues that, in any event, these communications do not violate either provision of Paragraph 13. The Court will address each allegation in order.

MLCC's July 2013 cease-and-desist letter provides the case number to the First Lawsuit and more specifically refers to the Consent Final Order. Nowhere does the Agreement prohibit the parties from mentioning the mere existence of a lawsuit, a point that even Spaulding recognized, when it wrote in its motion, "Spaulding [] and MLCC strictly agreed to not communicate the *terms* of the[] [A]greement . . . ." (emphasis added). The cease-and-desist letter does not mention those terms. It mentions the existence of a lawsuit and judicial findings contained in the Consent Final Order, the disclosure of which the Agreement permitted.

MLCC employee Joseph Mazzuca's telephone conversation with a mutual client did not refer to the First Lawsuit or the Agreement. In fact, according to Mr. Mazzuca's

deposition, which Spaulding supplies in support of its claim, "Spaulding[]'s name was never mentioned." (Dkt. 89, p. 23). This conversation did not violate either non-disclosure provision.

Neither did the court filing in the Bost litigation. Paragraph 13 permits disclosures if a party is "responding to a subpoena or other legal or administrative process." This is a broad exception, one permitting disclosures so long as they are "responding" to a "legal or administrative process." The Washington Borst litigation in which MLCC filed the Agreement certainly qualifies as a legal process. And according to the undisputed evidence, MLCC's counsel filed the Agreement in Response to Defendant Borst's opposition to MLCC's motion for summary judgment. By the plain language of the Agreement, disclosing it as MLCC's counsel did in the Borst litigation is precisely the kind of disclosure covered under Paragraph 13's "legal process" exception. This disclosure was not a violation.

As for Ms. Mazzuca's January 2015 email exchange with a competitor, whether it violated Paragraph 13 depends on a genuine issue of fact. Paragraph 13's second non-disclosure provision applies broadly to "any public comment with regard to the Agreement, the various litigations and proceedings." According to Spaulding's account of the email exchange, MLCC owner Julie Mazzuca referred to the First Lawsuit against Spaulding and stated that Spaulding "lost" it. MLCC argues that this email is a fraud. A fact-finder will have to decide. *See First National Bank of Arizona*, 391 U.S. at 288-89.

The Court rejects MLCC's argument that because the email was only sent to one person, it fails to qualify as a "public comment." In Paragraph 13, the intent behind "public

comment" is made clear by the contradistinction created in the next clause of the same sentence. That clause states: "nor will any Party [] make any form of press release, announcement, posting, or statement on any website or through social media." MLCC's reading of "public" would render this second clause superfluous, as each example in the second clause is a "public comment" as MLCC would have it defined. Under Florida law, and according to a time-honored rule of textual interpretation, this is a reading the Court must reject. *See Siedle v. National Ass'n of Securities Dealers, Inc.*, 248 F. Supp. 2d 1140, 1144 (M.D. Fla. 2002) ("The law compels that a contract should not be interpreted in a manner that would render a word, or term, extraneous.") (citing *Golden Door Jewelry Creation, Inc. v. Lloyds Underwriter Non-Marine Ass'n*, 117 F.3d 1328, 1338 (11th Cir. 1997)); *see also* Restatement (Second) of Contracts, § 203(a) (1981). When read harmoniously with this second clause, *see Guaranty Financial Services, Inc.*, 928 F.2d at 999-1000, "public" refers to third parties, people like industry competitor Flippin, the recipient of Ms. Mazzuca's email.

The Court also rejects MLCC's argument that, because Spaulding violated the Agreement by using "Meth Lab Cleanup" on websites, MLCC was freed of its non-disclosure obligation. MLCC, in short, reads Florida law too broadly. For one, the proposition applies, most commonly, to mutual obligations—for example, payment for services rendered. *See, e.g.*, *Toyota Tsusho America, Inc. v. Crittenden*, 732 So. 2d 472, 477 (Fla. 5th DCA 1999). And two, it excuses the non-breaching party from its reciprocal *performance* obligation. *See, e.g.*, *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 852 (11th Cir. 2013) (to sell and market patented medical device consistent

34

with terms of licensing agreement); *Mattocks v. Black Entertainment Television LLC*, 43 F. Supp. 3d 1311, 1320 (S.D. Fla. 2014) (to maintain a Facebook fan page).

The Eleventh Circuit case cited by MLCC illustrates. *See MDS (Canada) Inc.*, 720 F.3d at 840. In that case, the defendant, a patent licensee, allegedly failed to market and sell a medical device in the manner required by a licensing agreement. The breach at issue was the plaintiff-licensor's failure to pay USPTO maintenance fees to keep the patent current. *Id*. That failure, the defendant argued, freed the defendant of its performance obligation. *Id*. at 849. (The district court and the Eleventh Circuit disagreed, but on the grounds that the breach was not material.)

Here, MLCC correctly argues that Spaulding materially breached the Agreement as early as May 2014 when it used "Meth Lab Cleanup" on websites. But MLCC had no such mutual obligation. MLCC was not required to perform in kind. If it had, that performance might have been excused. Its obligation of non-disclosure, however, was not. *Cf. MDS (Canada) Inc.*, 720 F.3d at 840; *Toyota Tsusho America*, 732 So. 2d at 477.

A genuine issue of material fact precludes summary judgment on Count 4, but only as to the allegation that MLCC violated the terms of the Agreement in a January 2015 email. On this Count, for this allegation only, MLCC's motion for summary judgment will be denied. So will Spaulding's.

Finally, in Count 6, Spaulding argues that three of the four MLCC communications—the cease-and-desist letter, the telephone conversation, and the email exchange—amount to disparagement, also a violation of Paragraph 13. These arguments fail.

In the relevant provision, MLCC and Spaulding "agree to not disparage, defame or slander each other with regard to their services, advertising, training, credentials, training [sic], certification or related business activities." Only one of MLCC's communications—the telephone conversation—mentions "services" or "related business activities." For one, the only evidence of that conversation, Mr. Mazzuca's deposition testimony, fails to establish that Mazzuca said anything disparaging about anyone, as the evidence depicts a conversation in which he mostly listened. (See Dkt. 89-1, p. 39, Mazzuca Dep., p. 152, "Spaulding[]'s name was never mentioned . . . . They were talking about Spaulding [] and I understood it to be Spaulding []."). Moreover, once again, Spaulding was never mentioned in the conversation. In the face of these two undisputed facts, no reasonable juror could find that this phone conversation amounted to disparagement. *See Celotex Corp.*, 477 U.S. at 322-23.

The other two communications refer to the First Lawsuit and its result. Neither one comments on the areas to which the disparagement provision applies—which are services, advertising, training, credentials, certification, or any other related business activities. Even if the Court accepts Spaulding's version of the email exchange, mischaracterizing the First Lawsuit as a Spaulding loss does not amount to disparaging Spaulding's "services" or "related business activities." MLCC and Spaulding contracted to a narrow disparagement provision. The Court is only empowered to enforce that intent. As a result, Spaulding's disparagement claims must fail as a matter of law.

MLCC's motion for summary judgment on Count 6 will be granted.

It is ORDERED AND ADJUDGED that:

1.      Plaintiff Meth Lab Cleanup, LLC's Motion for Partial Summary Judgment (Dkt. 84) is GRANTED in part and DENIED in part. On Counts 2, 3, and 6 of Defendants' Counterclaim (Dkt. 32), the motion is granted. On Count 1 and 4, the motion is denied.

2.      Defendants' Motion for Partial Summary Judgment (Dkt. 89) is GRANTED in part and DENIED in part. On Breaches 3 and 5 alleged in the Complaint (Dkt. 1), the motion is granted. On Breaches 1 and 2, the motion is denied. On Counts 2, 3, 4, and 6 of the Counterclaim, the motion is denied.

3.      Plaintiff may proceed on Breaches 1 and 2 alleged in its Complaint; HOWEVER, Plaintiff is hereby ordered to inform the Court via the Electronic Document Filing System (CM/ECF) whether it will proceed or abandon Breaches 1 and 2. This filing must be received on or before March 30, 2016. If not received, the Court will construe the non-filing as an abandonment of the claims, which may subject the claims to involuntary dismissal.

4.      Defendants may proceed on Counts 1 and 4 of the Counterclaim.

**DONE** and **ORDERED** in Tampa, Florida, this 24th day of March, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

37